IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 4:18-cr-227 |
| BRIAN DEAL, | |
| Defendant. | |

**O R D E R**

Like much of the world, inmates in federal prisons are understandably concerned about the health risks posed by the COVID-19 (coronavirus) pandemic. Given the recognized risks that the pandemic poses within detention facilities, many federal prisoners are filing motions for immediate release. Defendant Brian Deal, through counsel, has filed such a motion, a "Motion for Release Under the Second Chance Authorization Act, 18 U.S.C. § 3582 and § 4205(g)." (Doc. 34.) The Court is not unsympathetic to Deal's concerns. However, he must first petition the Bureau of Prisons ("BOP") to file a motion on his behalf before coming directly to the Court for the extraordinary relief he seeks. He has not done so. Thus, for the reasons explained below, the Court **GRANTS** the United States' Motion to Dismiss, (doc. 36), and **DENIES** Deal's Motion, (doc. 34), **WITHOUT PREJUDICE**.

**BACKGROUND**

After Deal pleaded guilty to conspiracy to wire fraud in violation of 18 U.S.C. § 1343, the Court sentenced him to thirty-three months' imprisonment. At the time he filed his Motion, Deal was serving that sentence at a minimum-security camp at FCI Williamsburg located in Salters, South Carolina, with a projected release date of July 7, 2021. (Doc. 36, p. 2.) On July 19, 2020,

Wilson filed the instant Motion asking to be released from incarceration pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (Doc. 34.) Wilson maintains that the risk of transmission of COVID-19 within the detention facility when combined with his medical conditions creates a substantial risk to his health and establishes an "extraordinary and compelling reason" for his immediate release. (Id. at pp. 5—7.)

The United States filed a Motion to Dismiss Deal's Motion and argued that his motion fails because he has not exhausted his administrative remedies. (Doc. 36, pp. 10–16.) The Government argues that, pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court can only consider Deal's request for compassionate release after he requests that the BOP file such a request on his behalf and then wait for the BOP to either deny the request or fail to respond for thirty days. (Id.) Deal has not filed a response to the Government's Motion.

**DISCUSSION**

**I.    Background of Releases to Home Confinement**

Defendant has not requested that this Court release him to home confinement. However, he did make such a request to the Warden at FCI Williamsburg as well as to BOP's Residential Reentry Center in Atlanta, Georgia. Defendant cites these requests when arguing that he has exhausted his available administrative remedies prior to asking this Court to grant him compassionate release. (Doc. 34, pp. 4–5.) Thus, a discussion of home confinement is necessary to frame the Court's discussion of the parties' arguments.

Designation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP. Pursuant to 18 U.S.C. § 3621, "[a] person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed . . . ." 18 U.S.C. § 3621(a). This

statute gives the BOP the exclusive authority to designate the place of imprisonment of any prisoner. Id. at § 3621(b). The United States Supreme Court has interpreted this statute to mean that "the Attorney General, through the BOP, has the responsibility for administering [a prisoner's] sentence." United States v. Wilson, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)); see also United States v. Smalley, No. 1:13-CR-010, 2015 WL 5001189, at *1 (S.D. Ga. Aug. 21, 2015) ("the 'primary authority to designate defendant's manner and place of confinement at any stage during execution of [his] prison sentence rests with the Bureau of Prisons, not with the Court'") (quoting United States v. Morales–Morales, 985 F. Supp. 229, 231 (D.P.R. 1997)); Brown v. Atkinson, No. 09–23555–Civ, 2010 WL 3659634, *4 (S.D. Fla. Jun. 11, 2010) ("A federal district court does not have the authority to order an inmate's placement in a particular facility or program.") (cited sources omitted).

Recent developments surrounding the COVID-19 pandemic have not taken decisions regarding placement in home confinement outside the purview of the BOP. A memorandum from the Attorney General directs the Director of the BOP to prioritize the use of "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." See Memorandum dated Mar. 26, 2020, *available at* https://www.justice.gov/file/1262731/download (last visited September 8, 2020). As explained by the Honorable Lisa Godbey Wood of this Court:

> On March 26, 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to

> "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." On April 3, 2020, the Attorney General issued a memorandum directing BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations."

United States v. Allen, No. CR 214-024, 2020 WL 2199626, at *1 n.1 (S.D. Ga. May 6, 2020).

"[A] request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release." Id. at *1. To effectuate the Attorney General's March 26, 2020 and April 3, 2020 memoranda, the BOP is utilizing its authority under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541—not the compassionate release provision of 18 U.S.C. § 3582(c). See Allen, 2020 WL 2199626, at *1. Neither Section 3624(c)(2) nor Section 60541 vests the Court with any authority to order the BOP to transfer a defendant to home confinement. Id. (denying request for home confinement and explaining that statutes Attorney General is using to implement CARES Act "do not authorize a federal court to order the BOP to release a prisoner"). Thus, a request for home confinement is solely within the purview of the BOP and is distinct from the relief that Defendant seeks through his instant Motion, compassionate release.

**II.    Defendant's Request for Compassionate Release**

Likely cognizant of this Court's inability to designate Deal to home confinement, his counsel has filed a motion requesting compassionate release under the First Step Act at 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) provides a narrow path for a district court to reduce the sentence of a criminal defendant where there are "extraordinary and compelling reasons" to do so. 18 U.S.C. § 3582(c)(1)(A)(i). Prior to the passage of the First Step Act, only the Director of the BOP could file a motion for compassionate release in the district court. The First Step Act modified Section 3582(c)(1)(A) to allow a defendant to move a federal district court for

compassionate release. However, there are four prerequisites to a court's granting compassionate release under the First Step Act. First, the defendant must have exhausted his administrative rights with the BOP. Id. Second, the court must find that "extraordinary and compelling reasons warrant" release. 18 U.S.C. § 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A). "The defendant generally bears the burden of establishing that compassionate release is warranted." United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *2 (M.D. Fla. May 15, 2020) (citing United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013)).

The United States argues that Deal cannot meet the first of these requirements—exhaustion of administrative remedies—because he has failed to present his request for compassionate release to the Warden of his facility or anyone within the BOP. (Doc. 36, pp. 10—16.) Section 3582(c)(1)(A) prescribes that a defendant may file a motion for compassionate release only "after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

In his Motion, Deal argues that he has met this requirement, and he states that "[he] has requested in writing that both FCI Williamsburg and RRM Atlanta either grant him an early release to home confinement under the CARES Act or move the Court for a compassionate release, but both requests have been ignored for some time." However, the letters Deal attaches to his Motion belie this statement. In these letters to these facilities, Deal only requested release to home confinement. (Doc. 34, pp. 10—13.) Deal's letters did not mention compassionate release, much less request that the BOP move the Court for compassionate release on his behalf. (Id.) As

explained above, a request for release to home confinement significantly differs from a compassionate release request. Thus, Deal's requests for release to home confinement cannot satisfy Section 3582(c)(1)(A)'s administrative exhaustion requirement as to compassionate release. Deal does not contest that he must pursue these administrative remedies prior to directly seeking compassionate release from this Court.[1] Because it is plainly evident that he has failed to meet this prerequisite, the Court must deny his Motion.

---

[1] It is unclear whether the Court may excuse a defendant's failure to fulfill Section 3582(c)(1)(A)'s administrative exhaustion requirements. The United States District Court for the Middle District of Florida explained that "[c]ourts around the country have been presented with the question of whether the administrative exhaustion or time provision may be waived and have reached different conclusions." United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *4 (M.D. Fla. May 15, 2020). Ultimately, after reviewing precedential guidance from the United States Supreme Court and the statute itself, the court in Smith concluded that the exhaustion requirement of Section 3582(c)(1)(A) was mandatory and could not be excused. Id. Further, as to the "unique circumstances of the COVID-19 pandemic" specifically, the court found that a majority of district courts have found that those circumstances do not warrant waiver of the exhaustion requirement. Id. (collecting cases). The court in Smith followed those courts and found that the requirement was not waivable and denied the defendant's request for compassionate release due to his failure to exhaust. Id. at *4-5; see also United States v. Kranz, No. 2:18-CR-14016, 2020 WL 2559551, at *3 (S.D. Fla. May 20, 2020) (after considering the binding precedent cited above, the Court concludes that it cannot excuse a defendant's failure to exhaust administrative remedies before the BOP prior to seeking relief under § 3582(c)(1)(A)); Allen, 2020 WL 2199626, at *2 ("There is no futility exception to § 3582(c)(1)(A)'s administrative exhaustion requirement, and the Court declines to invent one.").

Nonetheless, other courts have found that the exhaustion requirement can be waived and have allowed some defendants who have not fully pursued their requests before the BOP to bring claims for compassionate release due to the COVID-19 pandemic. See, e.g., United States v. Pomante, No. 19-20316, 2020 WL 2513095, at *4 (E.D. Mich. May 15, 2020) ("due to the unique and unforeseen threat posed by the COVID-19 pandemic to this Defendant because of his specific health conditions, the exhaustion of administrative process can be waived"); United States v. Milner, No. 5:16-CR-32-5 (LAG-CHW), 2020 WL 2744088, at *3 (M.D. Ga. Apr. 20, 2020) (waiving exhaustion requirement where Defendant had multiple sclerosis and was unable, through no fault of his own, to submit his request for release to the warden); United States v. Zukerman, No. 16 CR. 194 (AT), 2020 WL 1659880, at *1 (S.D.N.Y. Apr. 3, 2020) (in light of defendant's age and pre-existing conditions, "[his] exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic"). However, those courts that have found that exhaustion requirements can be waived only allow waiver where: (1) pursuing administrative remedies would prejudice the defendant; (2) the administrative process would be inadequate because of some legitimate question as to whether the BOP could grant the requested relief; or (3) the BOP has been shown to have already determined the issue presented or otherwise have been biased against the defendant. See Milner, 2020 WL 2744088, at *3 (citing McCarthy v. Madigan, 503 U.S. 140, 146–48 (1992) and Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020)); Sawicz, 2020 WL 1815851, at *2.

Here, the Court need not wade into the debate over whether Section 3582(c)(1)(A)'s exhaustion requirement is waivable. Even if the requirement *can be waived* Defendant has not argued, much less

## CONCLUSION

Based upon the foregoing, the Court **DENIES WITHOUT PREJUDICE** Defendant Brian Deal's Motion for Release, (doc. 34), and **GRANTS** the Government's Motion to Dismiss, (doc. 36).

**SO ORDERED**, this 18th day of September, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

established, that it *should be waived* on the specific facts of this case.